C35719, C35720, C34738        7-3-15

RECEIVED IN
COURT OF CRIMINAL APPEALS

83,289-01,02, JUL 09 2015
03
Abel Acosta, Clerk

Honorable Judge/Committee of Appeals,

I am enclosing offense reports for review for my Habeas Corpus suits that have been presented to the Appeals Court on 5/13/15. Tr. Ct. No. C35719-CR and Tr. Ct. No. 35720-CR are relevant to the offense C14-07690 (Navarro County sheriff's Department) and Tr. Ct. No. C34738-CR ~~and~~ is relevant to case/offense report 2012-00018722 (Corsicana police Department). Please review them and take them into consideration with my cases. I did not disclose them with the Habeas Corpus I filed because I did not (was not able to) view or receive either until after I had already filled out and sent both Habeas Corpus cases (notice the print date on the CPD one is 4/1/15 as my mother went and obtained both and sent them to me). I feel it is extremely important you view these in entirety as the errors, lies and indescrepancies are quite obvious (I have made notes on both throughout I can prove). I am also enclosing a copy of the Motion to suppress the attorney from the cases of C35719 and C35720 filed and allowed me to be blackmailed into not taking to court. I have already pointed out once that he only came and saw me one time during my entire incarceration in the Habeas Corpus and unsuccessfully filed 2 grievances with the State Bar for ineffective counsel (the Motion to suppress was MAILED to me and never discussed with me at all). I will request a change of venue in the event of being bench warranted back to my county due to previous unfairness, prosecutorial vindictiveness, conflict of interest and fear for my own safety. Thank you so very much for your time and consideration in all of this. Please review everything I am sending as it is of utmost importance to my cases and needs to be disclosed. Feel free to request anything additional that you  →

| STATE OF TEXAS | § | IN THE COUNTY COURT |
|---|---|---|
| | § | |
| vs. | § | AT LAW OF |
| | § | |
| LAUREN ELIZABETH AYCOCK | § | NAVARRO COUNTY, TEXAS |

## MOTION TO SUPPRESS

### TO THE HONORABLE JUDGE OF SAID COURT:

Now comes Lauren Elizabeth Aycock, Defendant, and files this Motion to Suppress and shows the following:

1. Defendant has been charged with the offenses of Possession of a Controlled Substance Penalty Group 1- Under 1 Gram in a Drug Free Zone in Cause No. C35719-CR, Possession of a Controlled Substance Penalty Group 1- Over 4 Grams Under 200 Grams with Intent to Deliver in a Drug Free Zone in Cause No. C37820-CR, and Possession of a Controlled Substance Penalty Group 3 - Under 28 Grams in a Drug-Free Zone in Cause No. C35723-CR.

2. On or about June 11, 2014, officers of the Navarro County Sheriff's Department executed a search warrant at 2924 W. State Hwy. 22, Corsicana, Texas. As a result of the execution of said search warrant, evidence that may be used by the State at trial of this cause was seized.

3. The actions of the Navarro County Sheriff's Department violated the constitutional and statutory rights of the Defendant under the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, Article I, Section 9 of the Texas Constitution, and under Article 38.23 of the Texas Code of Criminal Procedure.

4. Lauren Elizabeth Aycock was arrested without lawful warrant, probable cause or other lawful authority in violation of the rights of Lauren Elizabeth Aycock pursuant to the

-1-

Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, Article I, Sections 9, 10 and 19 of the Constitution of the State of Texas.

5. Any statements obtained from Lauren Elizabeth Aycock were obtained in violation of Article 38.22 of the Texas Code of Criminal Procedure and in violation of the rights of Lauren Elizabeth Aycock pursuant to the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, Article I, Sections 9, 10 and 19 of the Constitution of the State of Texas.

6. Any wire, oral, or electronic communications intercepted in connection with this case were seized without lawful warrant, probable cause or other lawful authority in violation of state and federal law.

7. Any tangible evidence seized in connection with this case was seized without warrant, probable cause or other lawful authority in violation of the rights of Lauren Elizabeth Aycock pursuant to the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, Article I, Sections 9, 10 and 19 of the Constitution of the State of Texas.

8. Defendant specifically shows that the search warrant at issue in this case, under which said evidence was seized, was in violation of the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, Article I, Sections 9, 10 and 19 of the Constitution of the State of Texas and under Article 38.23 of the Texas Code of Criminal Procedure, for the following reasons:

a. The affidavit upon which the search warrant was based was improperly and illegally executed.

b. The warrant was illegally issued for the reason that the supporting affidavit does not reflect sufficient probable cause to justify the issuance of a search warrant, in that: (i) the affidavit lacks sufficient underlying circumstances which would

-2-

permit the conclusion that the alleged contraband was at the location in which it was claimed; and (ii) the affidavit fatally fails to state sufficient underlying circumstances to establish the credibility of the affiant.

c.      The warrant was illegally issued because the affidavit did not show probable cause sufficient to justify the issuance of the search warrant, because the magistrate who issued the search warrant did not have a substantial basis for concluding that probable cause existed, i.e., that the alleged contraband would be found in a particular place, and thus did not meet the totality of the circumstances analysis adopted in Illinois v. Gates, 103 S.Ct. 2317, (1983).

d.      The search warrant was illegally issued because the magistrate's probable cause determination reflected an improper analysis of the totality of the circumstances test when, as a matter of law, the probable cause determination was not objectively reasonable.

e.      The search warrant was illegally issued because the issuing magistrate was misled by information in the affidavit that the affiant officer knew was false or would have known was false except for his reckless disregard for the truth.

9.      Therefore, Defendant requests that the following matters be suppressed at trial of this cause:

a.      Any and all tangible evidence seized by law enforcement officers or others in connection with the detention and arrest of Lauren Elizabeth Aycock in this case or in connection with the investigation of this case, and any testimony by the Navarro County Sheriff's Department or any other law enforcement officers or others concerning such evidence.

b.     The arrest of Lauren Elizabeth Aycock at the time and place in question and any and all evidence which relates to the arrest, and any testimony by the Navarro County Sheriff's Department or any other law enforcement officers or others concerning any action of Lauren Elizabeth Aycock while in detention or under arrest in connection with this case.

c.     All written and oral statements made by Lauren Elizabeth Aycock to any law enforcement officers or others in connection with this case, and any testimony by the Navarro County Sheriff's Department or any other law enforcement officers or others concerning any such statements.

d.     All wire, oral, or electronic communications intercepted in connection with this case and any and all evidence derived from said communications.

e.     Any other matters that the Court finds should be suppressed upon hearing of this motion.

**WHEREFORE, PREMISES CONSIDERED**, Defendant prays that the Court suppress such matters at trial of these causes, and for such other and further relief in connection therewith that is proper.

Respectfully submitted,

LAW OFFICE OF NEAL GREEN, JR.
110 West Collin Avenue
P. O. Box 346
Corsicana, Texas 75151
903-874-9009
903-874-5494 - Fax

By:_____
      Neal Green, Jr.
      State Bar No. 24036679
      nancy@nealgreenlaw.com
      Attorney for Lauren Elizabeth Aycock

-4-

# INCIDENT/OFFENSE REPORT

**Case Number** C14-07690

| Incident ID | Received Date | Received Time | Received Method | Received By |
|---|---|---|---|---|
| 755534 | 06/11/2014 | 10:58AM | ON VIEW | ROLLINS, MYRIAH |

Nature of Call Reported: **WARRANTS** *(circled)* — *NO Warrants upon entering, none of the assailants had warrants — FALSE (handwritten)*

Initial Call Reported By: NCSO 312 W 2ND CORSICANA, TX

*timeline is WRONG ★A (handwritten)*

Dispatched To: 2924 W HWY 22 CORSICANA, TX 75110

## Officer(s)/Unit(s) Assigned

| Officer/Unit | Date Notified | Dispatch | Arrive | Clear | Total | Disposition |
|---|---|---|---|---|---|---|
| 156D-RAGAN, RICKEY | 06/11/2014 | 10:58 | 10:58 | 13:35 | 02:37 | ARRIVED AT LOCATION |
| 103E-FARMER, STAN — | 06/11/2014 | 11:40 | 11:41 | 14:43 | 03:03 | CALL RECEIVED |
| 154H-WALLER, DARRELL — | 06/11/2014 | 11:40 | 11:41 | 13:36 | 01:56 | ARRIVED AT LOCATION |
| 135C-MURRAY, JAMES | 06/11/2014 | 11:40 | 11:55 | 13:02 | 01:22 | ARRIVED AT LOCATION |
| 133I-WAFER, FREDIA | 06/11/2014 | 11:48 | 12:00 | 13:00 | 01:12 | ARRIVED AT LOCATION |

Investigator Assigned: 156D-RAGAN, RICKEY

| Att/Compl | Area | Subdiv/Grid |
|---|---|---|
| COMPLETED | CID | |

| Incident/Offense Date | Incident/Offense Time | UCR Code | Status | Status Date |
|---|---|---|---|---|
| 06/11/2014 | 10:58AM | 18G | CLEARED BY ARREST | 06/11/2014 |

Incident/Offense Address: 2924 W. HWY 22

City, State & Zip Code: CORSICANA, TX 75110

Entry Point | Exit Point | Weapon/Force Used | Evidence Collected

| Inc/Off Code | Incident/Offense Description |
|---|---|
| 15990003 | MAN/DEL CS PG 1 >= 4G < 200G ← *How was it MAN/DEL? (handwritten)* |
| 15990127 | POSS CS PG 1 <1G DRUG FREE ZONE |
| 15990129 | POSS CS PG 3 <28G DRUG FREE ZONE |

| Category | Class | Description of Item(s) | Estimated Value | NCIC | Disp |
|---|---|---|---|---|---|
| EVIDENC | DRUGS, NARCOTI | PRESCRIPTION BOTTLE W/SUSPECTED MARIJUANA RESIDUE | $0.00 | N | |
| EVIDENC | DRUGS, NARCOTI | PRESCRIPTION BOTTLE W/MULTIPLE DIFFERENT TYPE PILLS INSIDE ? | $0.00 | N | |
| EVIDENC | DRUGS, NARCOTI | ADDERALL BOTTLE W/5 DIAZEPAM (VALIUM) PILLS, TOTAL WEIGHT APPROX. 1 G | $0.00 | N | |
| EVIDENC | DRUGS, NARCOTI | CARISOPRODOL BOTTLE W/2 OXYCODONE PILLS AND 2 MORPHINE PILLS TOTAL WEIGHT APPROX. 0.4 G | $0.00 | N | |
| | | | $0.00 | | |

| Year | Make | Model | Color | License | Description |
|---|---|---|---|---|---|
| | | | | | |

| Connection | Name & Address | Telephone | Description/Identification |
|---|---|---|---|
| COMPLAINANT | TEXAS, STATE OF ? | | |
| WITNESS | RAGAN, RICKEY 312 W. 2ND AVE CORSICANA, TX 75110 | | |
| WITNESS | FARMER, STAN 312 WEST 2ND AVE CORSICANA, TX 75110 | | |
| WITNESS | WALLER, DARRELL 300 W 2ND AVE CORSICANA, TX 75110 | | |

*All 3 entered location at appx 10:58, but notice time of arrival by Farmer + Waller on timeline. — Inconsistent/False (handwritten)*

Note: This report is furnished in compliance with the Texas Open Records Act, article 6252-17a Vernons Annotated Civil Statutes, state law, and published rulings relating to cases under investigation.

© 1999, The Software Group, Inc.

# INCIDENT/OFFENSE SUPPLEMENT

**Case Number**
C14-07690

| | | | |
|---|---|---|---|
| **Investigator Assigned** 156D-RAGAN, RICKEY | **Att/Compl** COMPLETED | **Area** CID | **Subdiv/Grid** |

| | | | | |
|---|---|---|---|---|
| **Incident/Offense Date** 06/11/2014 | **Incident/Offense Time** 10:58AM | **UCR Code** 18G | **Status** CLEARED BY ARREST | **Status Date** 06/11/2014 |

| | |
|---|---|
| **Incident/Offense Address** 2924 W. HWY 22 | **City, State & Zip Code** CORSICANA, TX 75110 |

| **Inc/Off Code** | **Incident/Offense Description** |
|---|---|
| | |

| CATEGORY | CLASS | DESCRIPTION OF ITEM(S) | ESTIMATED VALUE | NCIC | DISP |
|---|---|---|---|---|---|
| EVIDENC | DRUGS, NARCOTI | CLEAR BAGGIE W/SUSPECTED METHAMPHETAMINE APPROX 5.8G, RED BAGGIE W/SUSUSPECTED METHAMPHETAMINE APPROX. 1.8G, RED BAGGIE W/SUSPECTED METHAMPHETAMINE APPROX 1.6G | $0.00 | N | |
| EVIDENC | MISC. | RED BAGGIE W/RESIDUAL AMOUNT SUSPECTED METHAMPHETAMINE | $0.00 | N | |
| EVIDENC | MISC. | BLACK SAFE W/KEY | $0.00 | N | |
| EVIDENC | MISC. | VARIOUS PRESCRIPTION BOTTLES W/PILLS | $0.00 | N | |
| EVIDENC | MISC. | ZIPPERED POUCH, NUMEROUS EMPTY BAGGIES AND BLACK DIGITAL SCALES | $0.00 | N | |
| EVIDENC | MISC. | GLASS METHAMPHETAMINE PIPE W/SUSPECTED METHAMPHETAMINE | $0.00 | N | |
| EVIDENC | CASH | 1750 U.S. CURRENCY RELEASED TO D.A.'S OFFICE SUBJECT TO ASSET FORFEITURE | $1,750.00 | N | |
| EVIDENC | COMPUTER EQUIP | SAMSUNG SPH-762 CELL PHONE W/CHARGER #(903)851-1250 | $0.00 | N | |
| | | | $1,750.00 | | |

| YEAR | MAKE | MODEL | COLOR | LICENSE | DESCRIPTION |
|---|---|---|---|---|---|
| | | | | | |

| CONNECTION | NAME & ADDRESS | | DESCRIPTION/IDENTIFICATION |
|---|---|---|---|
| WITNESS | WAFER, FREDIA 312 W 2ND AVE CORSICANA, TX 75110 | | |
| SUSPECT | AYCOCK, LAUREN ELIZABETH 2934 W HWY 22 CORSICANA, TX 75110 | | |
| SUSPECT | EDRINGTON, ROBERT KYLE 2924 W HWY 22 CORSICANA, TX 75110 | 7 | |

© 1999, The Software Group, Inc.

OFFENSE REPORT (755534.1)

Case Number: C14-07690 by Officer 156D (RAGAN, RICKEY) 06/11/14

STATE OF TEXAS - LAUREN AYCOCK AND ROBERT EDRINGTON

DEFENDANT                    VIOLATION

Aycock, Lauren               Manufacture / Deliver Controlled Substance *[handwritten: How was it MANI DEL and not POS?? Nothing to Manufacture with]*
                             PG 1 >=4g<200g / Drug Free Zone (Meth)
          State Hwy 22       Texas Health and Safety Code 481.112
Corsicana, Texas             First Degree Felony

                             Possession of Controlled Substance
                             PG 1 <1g / Drug Free Zone (Oxycodone, Morphine)
                             Texas Health and Safety Code 481.134
                             Third Degree Felony

                             Possession of Controlled Substance
                             PG 3 <28g / Drug Free Zone (Diazepam)
                             Texas Health and Safety Code 481.134
                             State Jail Felony

Edrington, Robert            Manufacture / Deliver Controlled Substance
                             PG 1 >=4g <200g / Drug Free Zone (Meth)
2924 W. State Hwy 22         Texas Health and Safety Code 481.134
Corsicana, Texas             First Degree Felony

                             Possession of Controlled Substance
                             PG 1 <1g / Drug Free Zone (Oxycodone, Morphine)
                             Texas Health and Safety Code 481.134
                             Third Degree Felony

                             Possession of Controlled Substance
                             PG 3 <28g / Drug Free Zone (Diazepam)
                             Texas Health and Safety Code 481.134
                             State Jail Felony

SYNOPSIS:

On 6/11/14 during execution of a narcotics search warrant, Lauren
Aycock and Robert Edrington were found to be in possession of
methamphetamine and other controlled substances in form of
prescription medications. The location where Ms. Aycock and Mr.
Edrington resided and found in possession of above controlled
substances was within 1000 feet of James L. Collins Catholic School,
which is a drug free zone. Ms. Aycock and Mr. Edrington were
arrested and charged with Man/Del CS PG1 >=4g<200g / DFZ, POCS PG 1
<1g /DFZ and POCS PG3 <28g /DFZ.

DETAILS:

1.  On 6/11/14 Sergeant Ragan, Sergeant Darrell Waller and Captain *[handwritten: All 3 note "went" to location, but timeline suggests Ragan at 10.58 and waller & Farmer were "dispatched" at 11:41.]*
    Stan Farmer went to 2924 W. State Hwy 22 in Corsicana, TX to make
    contact with occupants at the residence. Sergeant Ragan and other
    NCSO Narcotic Officers had received information about subjects at
    that location possession and selling methamphetamine and
    prescription medications.

*[handwritten: make contact? First page states nature of the call was warrants which neither Aycock or Edrington had and officers did NOT have a warrant which is obvious in the report and is a known fact.]*

2. Sergeant Ragan knocked on the door and a subject identified as Bruce Edrington answered the door. Sergeant Ragan identified himself and asked if officers could enter the residence. Bruce Edrington allowed officers inside and told officers that he would wake up the owners of the residence. Officers observed a white male, later identified as Robert Edrington, exit a bedroom on the southeast corner of the residence. Sergeant Ragan could hear a female's voice in the bedroom and noticed that the female subject delayed exiting the bedroom. Sergeant Ragan could hear what seemed to be the female subject moving around inside the bedroom by the sound of her voice. The female subject, later identified as Lauren Aycock, exited the bedroom and all three subjects sat down in the living room area. Sergeant Ragan advised of the narcotics complaint and asked for identification. Both Robert Edrington and Bruce Edrington provided their information to officers and Ms. Aycock stated that her drivers license was in her bedroom. Sergeant Ragan requested that she get her drivers license and Ms. Aycock went to her bedroom where she retrieved her drivers license. Sergeant Ragan noticed that Ms. Aycock removed her wallet that contained her drivers license from a small black safe and then locked the safe back. Sergeant Ragan noticed that Ms. Aycock used a key on the necklace she was wearing to open the safe. Sergeant Ragan has knowledge through previous field experience and training that safes similar to what Ms. Aycock had in her bedroom, are commonly used to hold illegal contraband inside such as narcotics.

*[margin handwritten: Unlawful entry without warrant at that]*

*[margin handwritten: LIE - we were ASLEEP. The 3 officers came storming into the bedroom without warning]*

*[left margin handwritten: were detained 7 officers]*

*[margin handwritten: Assuming / Probable cause ??]*

3. Ms. Aycock then returned to the living room and provided officers with her drivers license. Ms. Aycock and Robert Edrington told officers that they lived at the residence together. Bruce Edrington stated that he was visiting and came to the residence on 6/10/14. Ms. Aycock and Robert Edrington confirmed that Bruce Edrington did not reside at the location. *[handwritten: Giving him NO authority to allow officers access into the home, unlawful entry]*

Captain Farmer noticed a prescription bottle sitting on top of the kitchen counter in plain view from the living room. The bottle did not contain a label and a residual amount of a substance was seen inside the bottle. Sergeant Ragan asked who the bottle belonged to and Robert stated that someone had left it at the residence. Sergeant Ragan asked if officers could look inside the bottle and Robert Edrington told officers that they could look inside. Captain Farmer opened the bottle and noticed a residual amount of suspected marijuana. The bottle was later marked Drug Exhibit #1 (D-1). Sergeant Ragan asked if anyone in the residence had prescription medication and Ms. Aycock stated that she did. Ms. Aycock showed Sergeant Ragan to her room and gave consent for Sergeant Ragan to look through the prescription medication and Ms. Aycock stated that she did. Ms. Aycock showed Sergeant Ragan to her room and gave consent for Sergeant Ragan to look through the prescription bottles and inside the bottles. Sergeant Ragan noticed multiple different types of pills inside one prescription bottle (D-2). Ms. Aycock told Sergeant Ragan that the unidentified pills were given to her by a friend. Ms. Aycock stated that the pills were a diuretic and not prescription medication. Ms. Aycock stated that she no longer had the correct bottle and had placed the pills in the bottle with her prescription. Ms. Aycock and Sergeant Ragan

*[margin handwritten: LIE, they had already started searching and poured out prescriptions]*

*[margin handwritten: They had already began dumping my medication on my bedside table out prior to all this with NO warrant or probable cause.]*

*[left margin handwritten: true]*

*[margin handwritten: 2 types - 1 Diuretic / 1 bi-polar, Abilify to be exact, Medicate]*

*[bottom handwritten: Upon the detectives coming in my bedroom and starting a search, I confronted them first thing about a warrant. When they told me they did not have a warrant, I immediately told them to leave my home. That's when they took us and detained us while Ragan left to go get the warrants. First thing they took was my cell phone (with no warrant)]*

then returned to the living room. Sergeant Ragan asked for consent to search the residence from both Ms. Aycock and Robert Edrington. Both Ms. Aycock and Robert Edrington refused to give consent. At that time, Sergeant Ragan left the location to attempt to obtain a search warrant for the residence. Captain Farmer and Sergeant Waller remained on location while Sergeant Ragan attempted to obtain a search warrant. —That was illegal & illegally issued

*What probable cause did they have to search, especially with NO warrant and entering illegally*

5. Sergeant Ragan completed a complaint and affidavit to which Justice of the Peace Vicki Gray issued a search warrant for the residence at 2924 W. State Hwy 22, Corsicana, TX including all outbuildings and vehicles at the location. Sergeant Ragan returned to the location and provided a copy of the search warrant to Ms. Aycock and Robert Edrington.

6. Officers searched the residence and located numerous items of contraband in a bedroom on the southeast corner of the residence which was identified as Ms. Aycock and Robert Edrington's bedroom. Officers located a shoe box under the bed that contained pieces of straw with burnt ends along with "Q-tips" with an unknown substance on them. Sergeant Ragan is familiar with straws with burnt ends being commonly used with methamphetamine. A small red colored baggie containing a residual amount of a crystal like substance suspected to be methamphetamine was found in the trash can in the bedroom. The baggie was later marked Non-Drug Exhibit #1 (ND-1). Officers located a black safe (ND-2) in the bedroom on a foot stool. Officers asked Ms. Aycock where the key to the safe was located and she replied that she had lost the key. Sergeant Ragan asked about a key on her necklace that she was wearing and she showed officers the key. Ms. Aycock told officers the key on the necklace was to the storage building in the back yard. Ms. Aycock gave the key to officers and the key opened the safe location in the bedroom. — warrant?

7. Officers noticed numerous items of contraband inside the safe when it was opened. Sergeant Ragan observed numerous prescription bottles with Ms. Aycock's name on them. Sergeant Ragan later identified the pills in each bottle and observed that three bottles contained pills that did not belong inside the bottle. Five round blue pills (D-4) identified as Diazepam, commonly known as Valium, were located in an Adderall bottle. Sergeant Ragan has knowledge that Diazepam (Valium) is a controlled substance. Two round blue colored pills (D-5) identified as Oxycodone and two gray colored pills (D-5) identified as Morphine were located in a Carisoprodol bottle. Sergeant Ragan has knowledge that Oxycodone and Morphine are also both controlled substances. One prescription bottle contained numerous white pills identified as Hydrocodone as well as a single yellow pill also identified as Hydrocodone. Both the white pills and the yellow pill were identified as Hydrocodone but the yellow pill was not kept in it's correct prescription bottle The other bottles contained the correct prescription pills (ND-3) Sergeant Ragan located a zippered pouch (ND-4) that contained numerous small empty red baggies similar to the baggie located in the trash can. Sergeant Ragan knows that such baggies are commonly used to package narcotics. A set of black digital scales were also inside the zippered pouch. Two small red baggies and a clear plastic baggie all containing a crystal

I'll come informed me years so they so here would the be with alleged marijuana issue, some rpm with 10 also not was in another room?

like substance suspected to be methamphetamine were located inside the zippered pouch. The three baggies containing suspected methamphetamine were marked (D-3). Also inside the safe was a plastic baggie containing $1750.00 in US Currency (ND-5). Sergeant Ragan has knowledge and previous field experience that currency obtained through narcotic sales are commonly kept with narcotics and packaging paraphernalia. A clear plastic bag containing $2.50 in change was also inside the safe. The bag of change was left in the safe when placed into evidence.

*[handwritten margin: seperate from the drugs that Aycock provided a W3 for as proof of where it came from]*

*[handwritten margin left: the bag was NOT paraphernalia a "Drug baggie".]*

8. A glass methamphetamine pipe (ND-5) containing suspected methamphetamine residue was found inside a black tennis shoe in the closet of the bedroom. Ms. Aycock advised that the shoe and the pipe belonged to Robert Edrington. Sergeant Ragan asked Robert Edrington if the pipe located inside the shoe belonged to him and he advised that it did not.

9. During the search of the bedroom where the narcotics were located, officers found identifying information and personal property belonging to both Ms. Aycock and Robert Edrington. Both Ms. Aycock and Robert Edrington advised that the methamphetamine that officers found and the prescription pills located in the wrong prescription bottles did not belong to them. Both Ms. Aycock and Robert Edrington were placed into custody and transported to the NCSO to compete booking. Bruce Edrington was released at the location without charges after determining that he did not reside at the location. Bruce Edrington did not have access to or property in the bedroom where the narcotics were located.

*[handwritten margin: So how could he allow officers into the home??]*

10. The suspected methamphetamine (D-5) was later tested and field tested positive for methamphetamine. The baggies were weighed and the two red baggies of suspected methamphetamine weighed approx. 1.6g and 1.8g both including packaging. The clear baggie of suspected methamphetamine weighed approx. 5.8g including packaging. The total amount of suspected methamphetamine was approx. 9g. The Oxycodone pills weighed approx. 0.1g and the Morphine pills weighed approx. 0.3g. The Diazepam (Valium) pills weighed approx. 1g.

11. Both Ms. Aycock and Robert Edrington were charged with Man/Del
CS
PG 1>=4g <200g / DFZ, POCS PG3 <28g / DFZ and POCS PG1<1g /DFZ.

12. Sergeant Ragan issued Ms. Aycock written receipt #6809 for the $1750.00 US Currency located in the safe. The $1750.00 US Currency (ND-6) was later released to the District Attorney's Office, subject to asset forfeiture.

*[handwritten margin: It was re-seized within hours of us being arrested allegi "contraband" from detectives going thru my phone that was seized without warrant.]*

13. A Samsung cell phone model SPH-L72 belonging to Ms. Aycock was also located at the residence. Sergeant Ragan has knowledge and previous field experience as cell phones being commonly used for contact between dealers and buyers during narcotic sales. Sergeant Ragan later completed a complaint and affidavit to which District Judge James Lagomarsino issued a search warrant for the Samsung cell phone model SPH-L72 belonging to Ms. Aycock. Detective Michael Dockery with Corsicana Police Department recovered the

electronic data and memory from the cell phone and burned to a disc. Sergeant Ragan took possession of the disc and forwarded with case file. The cell phone was then marked (ND-7) and placed into evidence.

1. Sergeant Ragan will send Drug Exhibit #3,4 and 5 to the DPS Lab in Waco, Texas for further analysis. Drug Exhibits #1, 2 and Non Drug Exhibits #1,2,3,4,5,6 and 7 will be placed into evidence at the sheriff's office.

RUG EVIDENCE:

- prescription bottle with suspected marijuana residue.
- prescription bottle with multiple different type pills inside
- Adderall bottle containing (5) Diazepam (Valium) pills, total weight of approx. 1g
- Carisoprodol bottle containing (2) Oxycodone pills and (2) Morphine pills, total weight of approx. 0.4g
- One clear baggie containing suspected methamphetamine (approx. 5.8g), one red baggie containing suspected methamphetamine (approx. 1.8g) and one red baggie containing suspected methamphetamine (approx. 1.6)

ON-DRUG EVIDENCE:

  red baggie containing residual amount of suspected methamphetamine
  black safe with key
  various prescription bottles containing pills
  zippered pouch, numerous empty baggies and black digital scales
  glass methamphetamine pipe with suspected methamphetamine
  $1750.00 US Currency, released to DA's Office subject to asset forfeiture
  Samsung cell phone model SPH-762 with charger

WITNESSES:

Sgt. Rickey Ragan          all details of case
NCSO

Captain Stan Farmer        all details of case
NCSO

Sgt. Darrell Waller        execution of search warrant — But they all 3 made their initial contact together and entered the residence together
SO

Dep. Fredia Wafer          scene security / prisoner transport
SO

The sheriff, Elmer Tanner, also made a personal appearance in my home strolling in and quote "Well well well, what do we have here?" But is not listed anywhere in the report as being dispatched or sent out but is NCSO.



**Print Date/Time:** 04/01/2015 16:58
**Login ID:** rdavis
**Case Number:** 2012-00018722

**ORI Number:**

Corsicana Police Department
TX1750100

| Type | No. | Name | Address | Phone | Race | Sex | DOB/Age |
|------|-----|------|---------|-------|------|-----|---------|
| Suspect | 1 | Aycock, Lauren Elizabeth | 2924 W STATE HIGHWAY 22 Corsicana,TX 75110 | (903)851-1250 | White | Female | 07/04/1984 28 |
| Victim | 1 | Huffman, Rebekah Lea | 213 E DRANE AVE Corsicana,TX 75110 | (903)872-3871 | White | Female | 01/07/1982 30 |
| Victim | 2 | Pittman, Jeffrey William | UNKNOWN Corsicana,TX 75110 | (903)340-5820 | White | Male | 06/30/1983 29 |
| Witness | 1 | Edrington, Robert Kyle | 2926 W STATE HIGHWAY 22 Corsicana,TX 75110 | (903)851-1250 | White | Male | 12/30/1986 25 |
| Witness | 2 | Newton, Monica Renee | 109 N FORDYCE Blooming Grove,TX | (903)467-6426 | White | Female | 07/04/1982 30 |

*Was not present at incident - HEARSAY INCREDIBLE*

*- Prison currently*

**Subject #**    **1-Suspect**

**Primary:** Yes
**Name:** Aycock, Lauren Elizabeth
**Address:** 2924 W STATE HIGHWAY 22
Corsicana TX 75110
**Primary Phone:** (903)851-1250

**Suspect Type:** Arrestee
**Race:** White
**Height:** 5ft 5 in
**Eyes:** Brown
**SSN:**

**Sex:** Female
**Weight:** 165.0 lbs.
**Hair:** Blonde
**DVL #:**

**DOB:** 07/04/1984

**Age:** 28
**State:** TX

**Disposition:** Arrested    **Date:** 09/12/2012    **Custody Status:** In Custody

*Incident occured 8/28/12*

**Related Offenses**

| Group/ORI | Crime Code | Statute | Description |
|-----------|-----------|---------|-------------|
| State | 13A | PC 22.02(a)(2) | Agg Assault W/Deadly Weapon |

| No. | Type | Name | Relationship |
|-----|------|------|--------------|
| 1 | Suspect | Aycock,Lauren Elizabeth | Friend |
| 1 | Suspect | Aycock,Lauren Elizabeth | Acquaintance |

Summary:

Aycock's story is consistent through the entire report. Questionable credibility of Huffman, esp since Oakeny's superior/co-worker testified about hearing Pittman + Huffman's conversation. Also, any reports/interviews from CPS with Payton Aycock? If that occured factually (which it obviously DID NOT,) he would be a victim as well. Ask Payton Aycock. Aycock paid probation for a year, attended anger management and parenting, had to voluntarily withdraw from Navarro and transfer 40 miles outside of town and is now imprisoned with a 10 year Ag sentence (first offer was max 20) due to this incident.



# Corsicana Police Department
# Detail



Print Date/Time: 04/01/2015 16:58
Login ID: rdavis
Case Number: 2012-00018722

ORI Number:

Corsicana Police Department
TX1750100

## Offense #    1

Group/ORI:  State         Crime Code:  13A      Statute:  PC 22.02      Counts:  1      Attempt/ Commit Code:   Commit
                                                          (a)(2)

Description:    Agg Assault W/Deadly                                              Offense Date:      08/28/2012
                Weapon
NCIC Code:      13150005                Scene Code:       Residence/Apartmen      Bias/Motivation:   No Bias
                                                          t
Offense Status:  Cleared/Arrest        Status Date:       09/12/2012             *Protecting Property in Residence*

IBR Seq. No:       1

### Aggravated Assault/ Homicide   Argument
### Circumstances #1:

### Weapon Code : Handgun

## Subjects



# Corsicana Police Department
## Detail



**Print Date/Time:** 04/01/2015 16:58
**Login ID:** rdavis
**Case Number:** 2012-00018722

**ORI Number:**

Corsicana Police Department
TX1750100

## Case Details:

| | | | | |
|---|---|---|---|---|
| Case Number: | 2012-00018722 | | | |
| Location: | 1713 BOWIE CIR | **Incident Type:** | Assault | |
| | Corsicana, TX 75110 | **Occured From:** | 08/28/2012 21:00 | |
| | | **Occured Thru:** | 08/28/2012 21:16 | |
| | | **Reported Date:** | 08/28/2012 21:06 Tuesday | |
| Reporting Officer ID: | 1194-DeChaume | **Status:** Closed/Cleared | **Status Date:** | 09/12/2012 |
| | | **Disposition:** Arrest | **Disposition Date:** | 09/12/2012 |
| Assigned Bureau: | CID | | | |

### Case Assignments:

| Assigned Officer | Assignment Date/Time | Assignment Type | Assigned By Officer | Due Date/Time |
|---|---|---|---|---|
| 1193-Dockery | 08/29/2012 08:08 | Detective | 1129-Givens | 09/12/2012 08:09 |

| | | | | |
|---|---|---|---|---|
| | | | | |

| Modus Operandi | Solvability Factors | Weight |
|---|---|---|
| No Force Used | Best Information, Suspect Known | 50.000 |
| Gun Used/Exhibited | | |

**Total: 50.000**

## Offenses

| No. | Group/ORI | Crime Code | Statute | Description | Counts |
|---|---|---|---|---|---|
| 1 | State | 13A | PC 22.02(a)(2) | Agg Assault W/Deadly Weapon | 1 |



# Corsicana Police Department
## Detail



| | | | |
|---|---|---|---|
| **Print Date/Time:** | 04/01/2015 16:58 | | Corsicana Police Department |
| **Login ID:** | rdavis | **ORI Number:** | TX1750100 |
| **Case Number:** | 2012-00018722 | | |

**Arrest #**   2386 A

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Name:** | Aycock, Lauren Elizabeth | **Date/Time:** | 09/02/2012 09:35 | **Type:** | Warrant/Taken into Custody | **Status:** | In Custody |
| **Address:** | 2924 W STATE HIGHWAY 22 Corsicana, TX 75110 | **Race:** | White | **Sex:** | Female | **DOB:** | 07/04/1984 |
| | | **Height:** | 5ft 5 in | **Weight:** | 165.0 lbs. | | |
| | | **Eyes:** | Brown | **Hair:** | Blonde | | |
| **Phone:** | (903)851-1250 | **SSN:** | | **DVL#:** | | **State:** | TX |

**Location:** 3200 W 7TH AVE Corsicana, TX 75110

*NAVARRO COLLEGE COSMETOLOGY WHILE AT SCHOOL; later forced to withdrawl due to arrest which had nothing to do with school*

**Age at Arrest:** 28

**Clears Case:** Yes

| **Arresting Officers** | **Bureau** | **School Resource Officer** |
|---|---|---|
| 1193-Dockery | | No |

## Arrest Charges

| No. | Group/ORI | Crime Code | Statute | Description |
|---|---|---|---|---|
| 1 | State | 13A | PC 22.02(a)(2) | Agg Assault W/Deadly Weapon |

| | | | | |
|---|---|---|---|---|
| **Counts:** | 1 | **Charge Date/Time:** 09/12/2012 09:35 | **Attempt/Commit:** Commit | |
| **Disposition:** | Jailed | **Disposition Date:** 09/12/2012 | **NCIC Code:** 13150005 | |
| | | | **Other ORI:** No | |

## Property

---

Page: 6 of 9



| Print Date/Time: | 04/01/2015 16:58 | | |
|---|---|---|---|
| Login ID: | rdavis | ORI Number: | Corsicana Police Department |
| Case Number: | 2012-00018722 | | TX1750100 |

**Subject #**   **1-Witness**

| Primary: | No | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Name: | Edrington, Robert Kyle | **Race:** | White | **Sex:** | Male | **DOB:** | 12/30/1986 | | |
| Address: | 2926 W STATE HIGHWAY 22 | **Height:** | 5ft 10 in | **Weight:** | 195.0 lbs. | | | | |
| | Corsicana TX 75110 | **Eyes:** | Green | **Hair:** | Brown | **Age:** | 25 | | |
| Primary Phone: | (903)851-1250 | **SSN:** | | **DVL #:** | | **State:** | TX | | |

*Why is there NO statement from this witness yet one from someone who was NOT even present during alleged offense and he is also a resident of the home in which it occured?*

*Also, why is the child, Payton Aycock, not interviewed since there are false allegations made towards him as well?*

**Subject #**   **2-Witness**

| Primary: | No | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Name: | Newton, Monica Renee | **Race:** | White | **Sex:** | Female | **DOB:** | 07/04/1982 | | |
| Address: | 109 N FORDYCE | **Height:** | 5ft 7 in | **Weight:** | 112.0 lbs. | | | | |
| | Blooming Grove TX | **Eyes:** | Blue | **Hair:** | Blonde | **Age:** | 30 | | |
| Primary Phone: | (903)467-6426 | **SSN:** | 232 | **DVL #:** | | **State:** | TX | | |

*HEARSAY - UNCREDIBLE WITNESS - Alleged victim, Rebekah Huffman dated her brother shortly after offense occured for length of time over a year. They resided together and even were engaged at one time. Newton is now in prison for Ag Assault charges in addition to others and made contact with Aycock via letter from prison to Navarro County jail!*

**Arrests**

| Arrest No. | Name | Address | Date/Time | Type | Age |
|---|---|---|---|---|---|
| 2386A | Aycock, Lauren Elizabeth | 3200 W 7TH AVE  Corsicana, TX 75110 | 09/02/2012 09:35 | Warrant/Taken into Custody | 28 |



# Corsicana Police Department
## Detail



**Print Date/Time:** 04/01/2015 16:58
**Login ID:** rdavis
**Case Number:** 2012-00018722

**ORI Number:**

Corsicana Police Department
TX1750100

### Subject #    1-Victim

| | | | | | |
|---|---|---|---|---|---|
| **Primary:** | Yes | | | | |
| **Name:** | Huffman, Rebekah Lea | **Victim Type:** | Individual | | |
| **Address:** | 213 E DRANE AVE | **Race:** White | **Sex:** Female | **DOB:** | 01/07/1982 |
| | Corsicana TX 75110 | **Height:** 5ft 7 in | **Weight:** 130.0 lbs. | **Build:** | Small |
| **Primary Phone:** | (903)872-3871 | **Eyes:** Hazel | **Hair:** Red | **Age:** | 30 |
| | | **SSN:** ... | **DVL #:** | **State:** | TX |

#### Related Offenses

| Group/ORI | Crime Code | Statute | Description |
|---|---|---|---|
| State | 13A | PC 22.02(a)(2) | Agg Assault W/Deadly Weapon |

#### Victim/Offender Relationship

### Subject #    2-Victim

| | | | | | |
|---|---|---|---|---|---|
| **Primary:** | Yes | | | | |
| **Name:** | Pittman, Jeffrey William | **Victim Type:** | Individual | | |
| **Address:** | UNKNOWN | **Race:** White | **Sex:** Male | **DOB:** | 06/30/1983 |
| | Corsicana TX 75110 | **Height:** 5ft 9 in | **Weight:** 160.0 lbs. | **Build:** | Thin |
| **Primary Phone:** | (903)340-5820 | **Eyes:** Brown | **Hair:** Brown | **Age:** | 29 |
| | | **SSN:** | **DVL #:** | **State:** | TX |

#### Related Offenses

| Group/ORI | Crime Code | Statute | Description |
|---|---|---|---|
| State | 13A | PC 22.02(a)(2) | Agg Assault W/Deadly Weapon |

#### Victim/Offender Relationship

I think both should be re-interviewed seperately about the incident to compare to original interviews, especially since they went through a nasty break-up shortly after and Huffman



# Corsicana Police Department
# Detail



**Print Date/Time:** 04/01/2015 16:58
**Login ID:** rdavis
**Case Number:** 2012-00018722

**ORI Number:**

Corsicana Police Department
TX1750100

**Seq #** 2

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Property Codes:** | **Property Type:** | Audio/Visual Recording Device | **Property Class:** | Recordings | **Date Received:** | 09/13/2012 |
| Evidence Non-IBR Property | **UCR Value:** | $0 to $50 | **Initial Value:** | $0.00 | | |

**Description:** 7 audio recorded statements
1 CAC interview
attached to arrest report
& a copy placed in
records drawer 1

**Officer Remarks:**

**Recovery Information**

**Recovered Address:**

**Associated Subjects**

## Chain of Custody

| Date | Transaction | From | From Role | To | To Role |
|---|---|---|---|---|---|

**Seq #** 1

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Property Codes:** | **Property Type:** | Automobiles | ~~Property Class:~~ | ~~Automobiles~~ | **Date Received:** | 08/28/2012 |
| Destroyed/Damaged /Vandalized | **UCR Value:** | $50 to $200 | **Initial Value:** | $200.00 | | |

**Make:** Honda
**Year:** 1997
**Reg. State:** TX

**Model:** ACCORD

**Reg. ORI:** TX1750100

**Officer Remarks:**

**Color:** Silver
**Reg. Number:**

**Recovery Information**

**Recovered Address:**

**Associated Subjects**

Page: 8 of 9

 

# Corsicana Police Department
## Detail

**Print Date/Time:** 04/01/2015 16:58
**Login ID:** rdavis
**Case Number:** 2012-00018722

**ORI Number:**

Corsicana Police Department
TX1750100

| Date | Code | Type | Make | Model | Description | Tag No. | Item No. |
|---|---|---|---|---|---|---|---|
| 09/13/2012 | Evidence Non-IBR Property | Documents | | | Firearm application BAFT form CPS report Repair estimate Document turning over handgun Medical records all attached to arrest report | | |
| 09/13/2012 | Evidence Non-IBR Property | Audio/Visual Recording Device | | | 7 audio recorded statements 1 CAC interview attached to arrest report & a copy placed in records drawer 1 | | |
| 08/28/2012 | Destroyed/Damaged /Vandalized | Automobiles | Honda | ACCORD | | | |

### Seq # 3

| | | | | |
|---|---|---|---|---|
| **Property Codes:** | **Property Type:** | Documents | **Property Class:** | Document/Photo copy | **Date Received:** | 09/13/2012 |
| Evidence Non-IBR Property | **UCR Value:** | $0 to $50 | **Initial Value:** | $0.00 | | |

**Description:** Firearm application BAFT form CPS report Repair estimate Document turning over handgun Medical records all attached to arrest report

**Officer Remarks:**

### Recovery Information

**Recovered Address:**

### Associated Subjects

### Chain of Custody

| Date | Transaction | From | From Role | To | To Role |
|---|---|---|---|---|---|



# Corsicana Police Department
## Detail



**Print Date/Time:** 04/01/2015 16:58
**Login ID:** rdavis
**Case Number:** 2012-00018722

**ORI Number:**

Corsicana Police Department
TX1750100

---

**Arrest #** 2386 A

**Name:** Aycock, Lauren Elizabeth

**Address:** 2924 W STATE HIGHWAY 22
Corsicana, TX 75110

**Phone:** (903)851-1250

**Date/Time:** 09/02/2012 09:35

**Race:** White
**Height:** 5ft 5 in
**Eyes:** Brown
**SSN:**

**Type:** ⟨Warrant⟩ Taken into Custody
**Sex:** Female
**Weight:** 165.0 lbs.
**Hair:** Blonde
**DVL#:**

**Status:** In Custody
**DOB:** 07/04/1984

**State:** TX

**Location:** 3200 W 7TH AVE
Corsicana,TX 75110

*NAVARRO College Cosmetology / College Park Mall*

**Age at Arrest:** 28

**Clears Case:** Yes

**Arresting Officers**    **Bureau**    **School Resource Officer**

1193-Dockery

*Was NOT present at time of Arrest*

*(No)* *Yes, it was by Navarro college officers and Dean of Discipline at Navarro college*

## Arrest Charges

| No. | Group/ORI | Crime Code | Statute | Description |
|---|---|---|---|---|
| 1 | State | 13A | PC 22.02(a)(2) | Agg Assault W/Deadly Weapon |

**Counts:** 1
**Disposition:** Jailed

**Charge Date/Time:** 09/12/2012 09:35
**Disposition Date:** 09/12/2012

**Attempt/Commit:** Commit
**NCIC Code:** 13150005
**Other ORI:** No

## Property



| Print Date/Time: | 04/01/2015 16:58 | | | | Corsicana Police Department |
|---|---|---|---|---|---|
| Login ID: | rdavis | | ORI Number: | | TX1750100 |
| Case Number: | 2012-00018722 | | | | |

**Chain of Custody**

| Date | Transaction | From | From Role | To | To Role |
|---|---|---|---|---|---|

**Vehicles**

| No. | Role | Vehicle Type | Year | Make | Model | Color | License Plate | State |
|---|---|---|---|---|---|---|---|---|
| 1 | | 1-Passenger Car | 1997 | Honda | ACCORD | Silver | | TX |

She no longer posseses and NEVER had any work done to

**OfficerID: 1194, Summary**

On 08/28/2012 the complainant advised that a known actor assaulted her.

PROOF?

# OfficerID: 1194, Officer's Narrative

INTRODUCTION: On 08/28/2012 Officer DeChaume and I, Officer Bedsole, were dispatched to the government center in reference to an Assault call at approximately 0016hrs. Upon arrival I met with Rebecca L. Huffman (W/F DOB 01/07/1982) who stated that she was physically assaulted by Lauren E. Aycock (W/M DOB: 07/04/1984).

*[handwritten right margin: She was NEVER touched AT ALL]*

SCENE SUMMARY: The offense occurred at 1713 Bowie Corsicana TX. *[handwritten: Aycock's RESIDENCE]*

DETAIL OF OFFENCE: The victim, Rebecca L. Huffman, reported that she was assaulted by her friend, Lauren E. Aycock. Huffman advised us that she and her boyfriend, Jeff Pittman (W/M DOB: 06/30/1983) had been at Aycock's residence. Huffman and Aycock had been talking in Aycock's bedroom when all of a sudden Aycock started accusing Huffman of trying to steal a watch. Huffman advised that before her and her boyfriend, Jeff Pittman, could leave, Aycock pulled a gun on them. Huffman stated that she felt like she was about to get shot before they could leave the residence. Huffman advised that as they made their way out of the house and got into her vehicle Aycock said "if you ever come back, I'll blow your fucking head off" and then slammed her hands with the gun down on the hood of her car causing a dent.

*[handwritten left margin: No - call Billy Huffman, ex-husband. about leaving from Aycock in the post. LIE. LIE.]*

*[handwritten: LIE]*

*[handwritten right margin: LIE - examine gun for scratches, is isn't consistent to being hit with such a heavy weapon.]*

Huffman advised us that she never saw a watch in Aycock's residence. We were able to see a dent in the hood of Huffman's vehicle, a silver 1997 Honda Accord (TX LP          ). We were unable to take a picture of the damage due to the small nature of the dent. Huffman was adamant that we arrest Aycock for pointing a gun at her. We informed Huffman that we could not make an arrest based on her information only, but that we would go to Aycock' residence and speak with her.

*[handwritten left margin: IMPORTANT]*

*[handwritten: LIE]*

I called to inform him of what happened / he's an acquaintance.

Officer S. DeChaume had already received a call on his cell phone prior to me taking this call with Huffman from the other party, Lauren E. Aycock, advising him that she needed a close patrol of her house. Aycock advised she had been in a verbal argument and feared that the person, Rebecca Huffman, would return to mess with her vehicle.

We were walking out of the government center to look at the damage to Huffman's vehicle when Officer Abreu#1214 pulled Officer DeChaume aside. Officer Abreu advised Officer DeChaume that his wife, Desiree Abreu, had overheard Pittman and Huffman talking when she first arrived at the government center. Desiree Abreu stated that she overheard Huffman tell Pittman that they needed to make sure they had their story straight before they spoke with an officer. *[handwritten: ★★ CALL ABREU WITNESS ★★]*

*[handwritten right margin: Why was she not interviewed / listed as a witness??? CREDIBLE]*

*[handwritten left margin: WHY would Abreu LIE? an officer's wife? Does Huffman believes her an officer's her an officer's WIFE? OUTRAGEOUS]*

Officer DeChaume then came out to the vehicle and pulled Huffman aside and asked her about the comment about getting their story straight. Huffman denied that she had said that to Pittman and then stated that Desiree Abreu must have been mistaken. We gathered the rest of the information for the report and advised Huffman and Pittman that a detective would be contacting them. Officer DeChaume also advised that if it were found during the investigation that false information had been provided, the person providing that information could be charged with *[handwritten: ★]* False Report to a Peace Officer. Huffman continued to state that Aycock had displayed a handgun and had pointed it at her.

We went to Aycock' residence at 1713 Bowie, and spoke with her and her boyfriend, Kyle Edrington (W/M DOB: 12/30/1986). Aycock advised us that both Huffman and Pittman were at

*[Handwritten margin note, top left: Aycock had been in the hospital the previous day due to back injury she's disabled from - get records NATRONA REGIONAL HOSPITAL]*

her residence and that Pittman had come to see Edrington. We spoke to both Aycock and Edrington. Edrington advised us that he told Huffman to stay outside because Aycock was not feeling well and was trying to sleep. Huffman, with Edrington trying to stop her, entered the residence anyway and walked to Aycock's bedroom. Aycock told us that Huffman asked her if she could buy some of her prescription medication, Xanax, and Aycock said that she told Huffman no and to get out of her room. Aycock stated that Huffman had her back to her and was messing with something on her dresser. Aycock told us that Huffman commented on a picture on the dresser and she told Huffman to leave her room again. Aycock said that she became suspicious because it appeared that Huffman had put something into her pocket and then walked out of the bedroom. Aycock told us that she got up and followed Huffman into the dining room and confronted her about taking her watch, which was a replica Rolex that her mother had purchased for her. Huffman denied taking the watch and turned and emptied her pockets on the dining table. Huffman then walked away and Edrington saw the watch lying on top of some mail on the table. Aycock told me she saw the watch, which had been on her dresser and became very angry. Aycock said that she walked outside and confronted Huffman about the watch as she and Pittman were entering Huffman's vehicle. Aycock stated that she started to hit Huffman with a closed fist, but turned and struck the hood of the vehicle instead. Aycock told us that she yelled at Huffman, telling her never to come back to her house again, or she would "beat her fucking ass". Aycock said she then called Officer DeChaume to request a close patrol due to the argument. Aycock said that she was afraid that Pittman and Huffman would damage her vehicle. We asked Aycock about displaying a handgun and she and Edrington denied doing so. Officer DeChaume asked Aycock if she owned a handgun and she stated yes. Officer DeChaume asked if she could show us the handgun and Aycock went back into the residence and brought out a black plastic case containing an unloaded Smith & Wesson revolver. Aycock stated that the pistol belonged to her grandfather, who was a Texas State Trooper. Aycock told us that she did not display the weapon and that she did not have any ammunition for the weapon in the residence.

*[Handwritten margin note, right: Broke / Forced entry into their home]*

This case has been forwarded to CID for further investigation.

*[Handwritten margin note, left: TRUE STORY - all Aycock, Edrington and Payton Aycock witnesses / victims]*

REAL EVIDENCE: None

SUMMARY: On 08/28/2012 Rebecca L. Huffman advised that she was assaulted by Lauren E. Aycock. *[Handwritten: Her WORD against the HOMEOWNER / VICTIM AYCOCK of theft]*

Reporting Officer: Off Travis Bedsole 1234
                   FTO Off Scott DeChaume 1194
Approving Supervisor: Sgt Kenneth Kirkwood 1110

On 08/29/2012, I Detective M. Dockery attempted contact with complainant in this case. I was not able to contact the complainant, so a message was left for her to contact me.

ON 08/29/2012, the complainant, Rebecca Huffman, contacted me back in reference to this case. Huffman reported to me that she would come to my office and speak with me in reference to the case at 13:30 hours this date. While I was on the phone Huffman made allegations to me that during the events that occurred last night that the suspect, Lauren Aycock, not only pointed the handgun at her, but that she pointed it at her 11 year old son Peyton and yelled at him to get back in his fucking room. Upon learning these allegations I made contact with the Law Enforcement Hotline for CPS and reported the allegations to them. The report was filed with a female who identified herself as MIMI ID number 1388. MIMI provided me with a reference number of 62769553 for the reporting to CPS.

*LIE*
*INTERVIEW PAYTON AYCOCK please!*
*or anyone who knows either, they know that's a LIE*

*BASED ON FALSE ALLEGATIONS*

*LIE*
*She lied!*

ON 08/29/2012, Complainant, Rebecca Huffman came to my office and to speak with me in reference to this case. Huffman advised me that Aycock had pointed a handgun at her and stated that she was going to blow her head off. Huffman advised that Aycock was accusing her of stealing a Rolex watch that she did not take. Huffman stated that she emptied her pockets and showed Aycock that she did not have any property that belonged to her. Huffman told this detective that while Aycock was in possession of the handgun that she pointed it at everyone in the residence, including her own son. During the interview Huffman provided a description of the handgun, that only a person who had seen it would have been able to provide. Huffman also advised that when she and Pittman were leaving the residence, that Aycock ran out of the house with the handgun and slammed it down on the hood of her vehicle causing a large dent in her hood. The interview between this detective and Huffman was audio recorded and a copy has been retained as evidence in this case. Huffman also advised that after the altercation, that she contacted one of her friends, Monica Newton, and advised her of what had happened. Huffman stated that Newton then contacted Aycock to speak with her about what had happened.

*LIE*

*You stated earlier it was so small you couldn't take a picture. Is the dent correct? Is it consistent with being hit with a heavy gun? Are there scratches on either? Can you consistent? Can you prove it?*

*Whose brother Greg Marderosian Rebekah ended up with shortly after. HEARSAY, was she there? How would she know? Proof?*

Upon further review I discovered that the patrol officers that initially responded to this call failed to photograph the damage that was done to Huffman's vehicle. On 09/12/2012, I made contact with Huffman who came to the police department so that I could obtain photos of the damage to her vehicle. Huffman had already provided me with an estimate from Jerry's paint and body showing the cost to repair the damage would be $590.77.

*Too late after original incident report.*
*The dent could have been from anything*

*More than the value of the car? What is the date on the estimate? On a dent that "was so small it couldn't even be photographed" and "wasn't photographed at time of incident" How can You prove Aycock did it??*

Det. Michael Dockery

ON 08/29/2012, I Detective M. Dockery attempted to contact the witness in this case, Jeff Pittman, to set up a time for him to meet with me. I was not able to make contact and received a message that the phone had a voicemail that had not been set up. Continued attempts will be made to contact this witness.

ON 08/30/2012, I detective M. Dockery made contact and met with Jeff Pittman, a witness in this case. Pittman advised that he had observed all of the events that took place at Aycocks residence. Pittman advised that he was contacted by Kyle Edrington, who is Aycock's boyfriend, and Edrington asked him to stop by the residence. Upon arrival Pittman stated that he and Huffman were invited into the residence by Edrington, and that Edrington stated that Lauren was in the bedroom sick. Pittman stated that Huffman entered the bedroom where Lauren was located, and after approximately 10 minutes she returned to the kitchen area of the residence where Pittman and Edrington were located. Pittman stated that Lauren came out of the bedroom and was in possession of a handgun and began to accuse Huffman of stealing a watch. Pittman stated that Lauren pointed the gun at Huffman and made threats to blow her head off, and that she was going to kill her. Pittman advised that Lauren's son entered the room and that Lauren turned and pointed the gun at him and told him to get his fucking ass in his room. Pittman was asked if he could describe the gun, and he provided a description of the gun, and advised that it was an old revolver. The description of the gun that Pittman provided would have only been able to be given by someone who had seen the gun. Pittman interview was audio recorded and a copy of the recording is retained as evidence in this case. The recording provided a detailed description of the events.

*Re-interview him to see if story is consistent.*

Det. Michael Dockery

*[handwritten margin notes:]*

*LIE - they called wanting PILLS xanax to be exact*

*LIE they were BOTH told NOT to come to my home to begin with and showed up begging for pills.*

*LIE, he was in his room while this occured!*

*LIE, she was immediately told to leave*

*LIES*

*Specifics? no old revolver is not very specific, that could be any gun.*

*LIE*

ON 08/30/2012, I Detective M. Dockery, made contact with Monica Newton, who advised that she had spoken with Aycock on the night of the offense. Newton advised that she would provide me with a statement of what she new but that I would have to come to her residence at 2212 W. 11th. Newton advised that she was recovering from Surgery and that she could not come in to meet with me.

*Guns?? plural? on people?*

I Detective M. Dockery, along with Detective R. Phillips went to Newton's residence. Newton advised that on the night of the altercation, Rebecca Huffman called her and told her what had happened. Newton stated that she made contact with Aycock and asked her what was going on, and told her that she had heard she was pulling guns on people. Aycock responded to Newton by saying hell yeah I did and if I would have had a bullet I would have shot her head off. Newton stated that the conversation was very short. The interview between myself and Newton was audio recorded, and a copy has been retained as evidence in this case.

*Hearsay. Do you have a recording of the phone conversation, Proof that it occured or Aycock saying that?*

*So all she(Aycock) said was that??*

Det. Michael Dockery

*Proof?*

*Hard evidence?*

On 09/13/2012, I Detective M. Dockery made contact with Lauren Aycock at Navarro County Jail. Upon contact with Aycock she was advised that she would be having an additional charge of Tamper with Government Record added to her current charge she was in custody for. I advised Aycock that I would be obtaining a search warrant for her reisdnece to obtain the gun that was used in the assault offense. Aycock advised me that there was no need for a search warrant that she would turn the gun over to my possession since it was evidence in the case. Aycock advised that she would have her grandmother get the gun and get it to me.

*[handwritten margin note:] Complied? Why would she be compliant if she had anything to hide?*

*[handwritten margin note, right:] for untipin Juvenile Mental Health records irrelevant to case.*

On 09/13/2012 at approximately 13:00 hours Brenda Daniel Aycocks mother, contacted me to see about bringing me the gun. I was not at the office at the time so when I returned I made contact with Daniel. Daniel advised that her mother Verna Crook had possession of the handgun and advised me that I could retrieve it from her.

On 09/13/2012, I made contact with Verna Crook at 521 Lexington and she released the handgun a Smith & Wesson 357 model 28-2 serial number N1503. The gun also has DPS 24915 engraved in the left side of the gun. I wrote a hand written note which Verna Crook signed indicating that the suspect Lauren Aycock told her to release the gun to this detective. The gun was logged as evidence and delivered to D. Piel in the property and evidence room.

Det. Michael Dockery

ON 08/30/2012, at approximately 17:00 hours, Candace Heisserman, with Child Protective Services, conducted an interview with the suspect, Lauren Aycock. The interview was conducted at the police department at my office. I Detective M. Dockery sat in on the interview between Aycock and Heisserman. During the interview Aycock advised that she was at home in bed sick, and that Huffman barged into her residence uninvited. Aycock advised that she was in bed with the door shut, so it is unclear to this detective how she would have known first hand that Huffman was not invited into the residence. Kyle Edrington, Aycock's boyfriend, had already admitted to calling Jeff Pittman, who is Huffman's Boyfriend, and inviting them to come visit. Aycock advised that Huffman entered her bedroom and laid down on the bed with her, and that she was trying to get zanex pills from Aycock. Aycock advised that she stated to Huffman that she did not have any and for her to leave her alone. Aycock never mentioned anything about asking Huffman to leave, or asking why she was in her residence. Aycock advised that that it was nighttime, after dark, and that the light in the bedroom was off. Aycock said that the bathroom light was on. Aycock said that Huffman got up and walked over to her dresser and was looking at a photograph on the dresser. Aycock stated that Huffman removed a Rolex watch from the dresser and placed it into her pocket and then left the room. IT is unclear how Aycock was able to see this since she had stated that the lights in the room were off, it was dark outside, and Huffman's back would have been facing her.

Aycock advised that after she noticed the watch was gone that she got up and went into the kitchen which is where Huffman, Pittman, and Edrington were located. Aycock mentioned something about the watch to Huffman, and that Huffman got nervous and emptied her pockets on the table. At one point Aycock said she saw Huffman remove the watch from her pocket, and then she stated that she walked over to the table and it was laying there. It is not clear if Huffman ever had possession of the watch. Aycock stated that she advised her son to go to his room and shut the door, and that she retrieved a gun from her bedroom and walked into the kitchen. Aycock denies pointing the gun at anyone, including her son, and stated that she only showed it to them to let them know that she had one and that no one was going to steal from her property. Aycock stated that she put the gun up and Huffman and Pittman left the residence. Aycock admits to going outside and striking the hood of Huffman's vehicle with her hand, but denies having the gun in her possession when this event happened. When asked if any damage was caused to Huffman's vehicle she responded with I hope so. Aycock admits to having the gun out and in her possession, but denies pointing the handgun at anyone, and denies making any threats to harm anyone. The interview that was conducted was audio recorded and a copy of the recording has been retained as evidence in this case.

Investigator Heisserman with DFPS asked Lauren if once the interview was concluded if we could go to her residence so that she could see the living conditions of the child and make sure there was food in the residence, and that the utilities work. Aycock was hesitant to let Heisserman come to her residence. I advised Aycock that due to the allegations that I needed to obtain photos of the weapon, Handgun, and advised her that I would obtain a search warrant to do so if necessary. Aycock consented to allow me to come to the residence and photograph the handgun, and agreed for Heisserman to come to the residence with me. Once the interview was concluded I Detective M. Dockery, along with Heisserman

went to Aycocks residence, 1713 Bowie Dr. Aycock invited us into the residence, and took me to the bedroom where the gun was located. Aycock retrieved the handgun from atop the armoire in her bedroom which was in a plastic carrying case. Aycock handed me case and all. I opened the case and determined that the handgun was a 357 revolver, and it did not have any ammunition in the gun or in the case. I took three digital photos of the handgun and all have been added to this report. I did note that the handgun had a stamp on the left side of the frame of DPS 24915. I have learned that this is not the serial number of the weapon, but is believed to be a tracking number for DPS so that the handgun could be tracked by the agency to show who it was issued to.

Aycock advised that the gun that she had in her possession belonged to her grandfather who was a retired DPS Trooper. Aycock stated that the gun was left for her son for when he was older. The gun was in fact determined to be her grandfather's weapon, but I was able to determine that it was not left in her possession for her son as she had stated. I spoke with Candace Heisserman who is working this investigation jointly with me. Heisserman had spoken with Brenda Daniel, Aycock's mother, and learned that the gun had been sold to a family friend. Daniel advised Heisserman that her father had expressed concern of Lauren having the handgun so she sold it to keep Lauren from getting it. The gun was then later sold to Jessie Bonner at Jessie's Gun Shop in Corsicana Texas by the person who Daniel had sold the gun to. I made contact with Jessie's gun shop on 09/04/2012, and spoke with him in reference to the handgun. Jessie confirmed, and provided me with documentation, and records of where he actually sold Aycock the gun. Aycock was not truthful as to how she came about having possession of the firearm, and this is supported by the transaction records, and the ATF form 4473 that she had to fill out to purchase the handgun. Aycock had purchased the handgun through a lay-a-way program, and actually took possession of the handgun on 04/25/2012. Aycock's damaged her credibility by not being honest as to how she came about possession of the handgun. What about Huffman's?? A dispatcher/police officer's wife heard her telling Pittman to get their story straight but was not even called as a witness

Aycock was asked by Heisserman if she had ever been treated for any mental illness and Aycock advised that she had not. I had knowledge of Aycock receiving treatment from green oaks hospital in the past for suicidal intentions. I made contact with Jerry Putman, Investigator with the Navarro County District Attorney's office and requested that he subpoena Aycocks medical records from Green Oaks Hospital. On 09/12/2012, I received the medical records, and a copy of the records are attached to the case file as evidence.

How?? What does that have to do with the incident at all?

Det. Michael Dockery.